**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**PHILIPPE CALDERON, ANCIZAR MARIN, AND
KELLI BOREL REIDMILLER,**
**Plaintiff-Appellants**

**v.**

**SIXT RENT A CAR, LLC,**
**Defendant-Appellee**

On Appeal From The September 22, 2022 Order Granting
Defendant-Appellee Sixt Rent a Car, LLC's Motion For Summary Judgment
And From The October 3, 2022 Final Judgment, Case No. 19-cv-62408-
SINGHAL, United States District Court For The Southern District Of
Florida, Fort Lauderdale Division (Hon. Anuraag Singhal)

**AMENDED BRIEF OF APPELLEE**

**Patrick M. Emery, Esq.**
**GA Bar No. 821303**
**Lavender Hoffman, LLC**
**945 East Paces Ferry Road N.E.**
**Suite 2000**
**Atlanta, GA 30326**
**Tel. (404) 793-0652**
**patrick.emery@lhalawyers.com**

**Irene Oria, Esq.**
**FL Bar No. 484570**
**FisherBroyles, LLP**
**1221 Brickell Ave.**
**Suite 900**
**Miami, FL 33131**
**Tel. (786) 873-4603**
**irene.oria@fisherbroyles.com**

*Counsel for Defendant-Appellee Sixt Rent a Car, LLC*

**APPELLEE'S CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1-1 of the Rules of the United States Court of Appeals for the Eleventh Circuit, Appellee Sixt Rent a Car, LLC ("Sixt") hereby states that the following individuals and entities have an interest in the outcome of this case:

1.  Philippe Calderon;

2.  Ancizar Marin;

3.  Kelli Borel Reidmiller;

4.  Sixt Rent a Car, LLC;

5.  Sixt SE (Xetra stock exchange ticker "SIX2");

6.  Sixt Transatlantik GmbH;

7.  Steven G. Calamusa;

8.  Matthew Peterson;

9.  Geoffrey S. Stahl;

10. Erika R. Willis;

11. Rachel A. Bentley;

12. Janet R. Varnell;

13. Brian W. Warwick;

14. Gordon & Partners, P.A. ;

15. Varnell & Warwick, P.A.;

16.    Patrick M. Emery;

17.    Irene Oria;

18.    FisherBroyles, LLP;

19.    Lavender Hoffman, LLC; and

20.    The Honorable Anuurag Singhal, U.S. District Judge for the Southern District of Florida.


Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Sixt hereby states its sole member is Sixt Transatlantik GmbH, which is wholly owned by Sixt's ultimate parent company, Sixt SE, a German corporation the stock of which is publicly traded on German Stock exchanges, including Xetra stock exchange (ticker "SIX2").

Dated: May 3, 2023.                    Respectfully submitted,

                                       */s/ Patrick M. Emery*
                                       Patrick M. Emery, Esq.
                                       GA Bar No. 821303
                                       Lavender Hoffman, LLC
                                       945 East Paces Ferry Road NE
                                       Suite 2000
                                       Atlanta, GA 30326
                                       Tel.: (404) 793-0652
                                       patrick.emery@lhalawyers.com

                                       Irene Oria, Esq.
                                       FL Bar No. 484570
                                       FisherBroyles, LLP
                                       1221 Brickell Ave.
                                       Suite 900
                                       Miami, FL 33131
                                       Tel.: (786) 873-4603
                                       irene.oria@fisherbroyles.com

                                       *Counsel for Defendant-Appellee*
                                       *Sixt Rent A Car, LLC*

# STATEMENT REGARDING ORAL ARGUMENT

Appellee Sixt Rent A Car, LLC respectfully submits that oral argument is unnecessary because the there is no genuine dispute of material fact, the applicable law is well-settled, and this appeal raises no complex issues.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................... 1

STATEMENT OF JURISDICTION .......................................... 4

STATEMENT OF THE ISSUES PRESENTED ON APPEAL .............. 5

STATEMENT OF THE CASE ................................................... 6

I.  COURSE OF PROCEEDINGS AND DISPOSITION
    BELOW ...................................................................... 6

    A.  The Original Complaint Alleged Plaintiffs Did Not
        Assent To The Terms and Conditions. ........................... 6

    B.  The First Amended Complaint Alleged Plaintiffs
        Did Not Assent To The Terms and Conditions. ............. 7

    C.  The Operative Second Amended Complaint Asserts
        Claims Founded On The Terms and Conditions. ........... 7

    D.  The District Court Granted Sixt's Motion For Summary
        Judgment In Sixt's Favor And Against Plaintiffs
        On All Of Their Claims. ................................................. 8

II. STATEMENT OF FACTS ...................................... 10

    A.  Sixt's Usual Rental Agreement and Rental Process
        At The Time Of Plaintiffs' Rentals. ............................. 10

    B.  Calderon's Car Rental From Sixt In Florida. ............... 12

        1.  Calderon Was Not Shown, Provided, Or Told
            How To Access The Terms And Conditions
            Before He Signed The Electronic
            Signature Pad. ...................................................... 12

        2.  Calderon Did Not Pay Any Of The Fees
            At Issue. .............................................................. 14

    C.  Marin's Car Rental From Sixt In Arizona. ................... 15

1.   Marin Was Not Shown, Provided, Or Told How To Access The Face Page Or The Terms And Conditions Before He Signed The Electronic Signature Pad. ..................................................... 15

2.   Marin Did Not Pay Any Of The Fees At Issue. ............................................................. 17

D.   Borel's Car Rental From Sixt In Colorado. .................. 18

1.   Borel Was Not Shown, Provided, Or Told How To Access The Terms And Conditions Before She Signed The Electronic Signature Pad. ......... 18

2.   Borel Did Not Pay Any Of The Fees At Issue. ............................................................. 20

III.   STANDARD OF REVIEW ................................................... 20

**SUMMARY OF THE ARGUMENT** .......................................... 21

**ARGUMENT** ................................................................... 24

I.   SUMMARY JUDGMENT AGAINST PLAINTIFFS ON THEIR CONTRACT CLAIMS SHOULD BE AFFIRMED BECAUSE PLAINTIFFS CANNOT PROVE SIXT BREACHED TERMS AND CONDITIONS THEY DID NOT ACCEPT. ............................................... 24

A.   The Terms And Conditions Were Not Incorporated By Reference Into Plaintiffs' Rental Agreements. ....... 26

1.   Calderon Was Not Provided Or Told How To Access The Terms And Conditions Before He Signed The Signature Pad. ................................. 26

2.   Marin Did Not Have Any Notice Of The Terms And Conditions Before He Signed The Signature Pad. ..................................................... 30

3.    Borel Was Not Provided Or Told How To Access The Terms And Conditions Before She Signed The Signature Pad.................................. 32

B.    Plaintiffs' Undisputed Testimony Proves That The Terms And Conditions Were Not Incorporated By Reference Into Their Rental Agreements.  ............. 36

C.    Plaintiffs Cannot Prove A Breach Of Terms And Conditions They Did Not Accept.  ............................... 40

II.    SUMMARY JUDGMENT AGAINST PLAINTIFFS ON THEIR FDUTPA CLAIMS SHOULD BE AFFIRMED BECAUSE PLAINTIFFS CANNOT PROVE CAUSATION OR ACTUAL DAMAGES.............................. 41

A.    Sixt's Demand That Plaintiffs Pay Fees Did Not Cause Them Actual Damages Because They Did Not Pay Any Fees.  ....................................................................... 42

1.    Calderon's Pre-rental Waiver Purchase Cannot Constitute Actual Damages Caused By Sixt's Post-rental Fee Demand.  ..................................... 44

2.    Marin Cannot Prove Causation Or Actual Damages Because He Did Not Pay Of The Fees At Issue.  ............................................................. 47

3.    Borel Cannot Prove Causation Or Actual Damages Because She Did Not Pay Any Of The Fees At Issue.  ................................................................. 48

4.    Plaintiffs Waived Any Arguments That They Can Prove Actual Damages.  ............................... 49

B.    Plaintiffs Lack Standing To Pursue FDUTPA Damages Claims.  ........................................................... 50

C.    Marin and Borel Waived Their Collateral Source Doctrine Argument, Which Cannot Be Used To Prove Actual Damages Anyway.................................... 53

**CONCLUSION** ........................................................................ 55

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT** ........................................................................ 57

**ADDENDUM** ........................................................................ 58

# TABLE OF CITATIONS

**Cases:**

*Alta Wind I Owner Lessor C v. United States*,
 150 Fed. Cl. 152 (2020) .................................................................. 51

*Am. States Ins. Co. v. Kelley*,
 446 So.2d 1085 (Fla. Dist. Ct. App. 1984) ................................. 48

*Bacon v. Avis Budget Grp., Inc.*,
 357 F.Supp.3d 401 (D. N.J. 2018) ................................................ 29

*Bacon v. Avis Budget Grp., Inc.*,
 959 F.3d 590 (3d Cir. 2020) ......................................................... 29

*Badillo v. Hill*,
 570 So.2d 1067 (Fla. 5th DCA 1990) ......................................... 45

*Beal v. Paramount Pictures Corp.*,
 20 F.3d 454 (11th Cir. 1994) ...................................................... 21

*Bechara v. Bayer Corp. (In re Trasylol Prods. Liab. Litig.)*,
 No. 08-MD-01928-JOHNSON,
 2010 U.S. Dist. LEXIS 145646 (S.D. Fla. Mar. 16, 2010) .............52, 53, 54

*BGT Group, Inc. v. Tradewinds Engine Services, LLC*,
 62 So.3d 1192 (Fla 4th DCA 2011) .......................................28, 29

*Burger King Corp. v. Weaver*,
 169 F.3d 1310 (11th Cir. 1999) ............................................40, 41

*Calderon v. Sixt Rent a Car, LLC*,
 No. 19-cv-62408,
 2020 U.S. Dist. LEXIS 24247 (S.D. Fla. Feb. 12, 2020) ...........................27

*Caribbean Cruise Line, Inc. v. Better Bus. Bur. of Palm Beach Cty., Inc.*,
 169 So.3d 164 (Fla. Dist. Ct. App. 2015) ...............................48, 49

*Cedric Kushner Promotions, Ltd. v. King*,
 533 U.S. 158 (2001) ...................................................................48

*Chadwick v. Bank of Am., N.A.*,
    616 F.App'x 944 (11th Cir. 2015) ................................................40

*City First Mortg. Corp. v. Barton*,
    988 So.2d 82 (Fla. 4th DCA 2008) ...........................................42

*Cottonwood Ctrs. Inc. v. Klearman*,
    No. CIV 18-252-TUC-CKJ,
    2018 U.S. Dist. LEXIS 179047 (D. Ariz. Oct. 17, 2018) ...............30, 31, 32

*David v. Richman*,
    568 So.2d 922 (Fla. 1990) .....................................................25, 37

*Desue v. 20/20 Eye Care Network, Inc.*,
    No. 21-CIV-61275-RAR,
    2022 U.S. Dist. LEXIS 45936 (S.D. Fla. Mar. 15, 2022) ...........................49

*Doe v. Univ. of Denver*,
    516 P.3d 946 (Colo. Ct. App. 2022) ...........................................25

*Dolphin Ltd. Liab. Co. v. WCI Cmtys., Inc.*,
    715 F.3d 1243 (11th Cir. 2013) ............................................ 20-21

*Edwards v. Vemma Nutrition*,
    No. CV-17-02133-PHX-DGC,
    2018 U.S. Dist. LEXIS 15371 (D. Ariz. Jan. 30, 2018) ...............................30

*Fioretti v. Mass. Gen. Life Ins. Co.*,
    53 F.3d 1228 (11th Cir. 1995) ...............................................24, 26

*French v. Centura Health Corp.*,
    509 P.3d 443 (Colo. May 16, 2022) ................................................... *passim*

*Gillespie v. Travelscape LLC*,
    No. C13-0622 RSM,
    2014 U.S. Dist. LEXIS 119148 (W.D. Wash. Aug. 26, 2014) ...................52

*Great W. Sugar Co. v. N. Nat'l Gas Co.*,
    661 P.2d 684 (Colo. App. 1982) ...........................................35, 37

*Haun v. Don Mealey Imps.*,
285 F.Supp.2d 1297 (M.D. Fla. 2003) ...................................................42, 43

*Higgs v. Costa Crociere S.P.A. Co.*,
969 F.3d 1295 (11th Cir. 2020) .............................................................54, 55

*Himes v. Brown & Co. Sec. Corp.*,
518 So.2d 937 (Fla. 3d DCA 1987) .............................................................43

*Hirsch v. Jupiter Golf Club LLC*,
232 F.Supp.3d 1243 (S.D. Fla. 2017) ..........................................................37

*Hurley v. Moore*,
233 F.3d 1295 (11th Cir. 2000) ........................................... 39-40, 45, 50, 53

*Janes v. Baptist Hosp. of Miami, Inc.*,
349 So.2d 672 (Fla. 3d DCA 1977) .............................................................55

*Jones v. TT of Longwood*,
No. 6:06-cv-651-Orl-19DAB,
2007 U.S. Dist. LEXIS 57365 (M.D. Fla. 2007) ..........................................43

*Lane v. Urgitus*,
145 P.3d 672 (Colo. 2006) ..........................................................................35

*Lazy Dog Ranch v. Telluray Ranch Corp.* ,
965 P.2d 1229 (Colo. 1998) ........................................................................35

*Leonard v. McMorris*,
63 P.3d 323 (Colo. 2003) ............................................................................48

*Lucas v. Breg, Inc.*,
212 F.Supp.3d 950 (S.D. Cal. 2016) ...........................................................52

*Lucas v. Hertz Corp.*,
875 F.Supp.2d 991 (N.D. Cal. 2012) ...........................................................31

*Maor v. Thrifty Auto. Group, Inc.*,
Case No. 15-222959-CIV-MARTINEZ-GOODMAN,
2018 LEXIS 168664 (S.D. Fla. Sept. 30, 2018) .....................................46, 47

*Qst Envtl. v. Nat'l Union Fire Ins. Co.*,
    Civ. No. 98-572-M,
    2002 U.S. Dist. LEXIS 9937 (D.N.H. 2002) .......................................... 52-53

*Rollins, Inc. v. Butland*,
    951. So.2d 860 (Fla. 2d DCA 2006) ....................................41, 42, 44, 48, 49

*Rollins, Inc. v. Heller*,
    454 So.2d 580 (Fla. Dist. Ct. App. 1984) ...............................................42, 43

*Savoca Masonry Co. v. Homes & Son Constr. Co.* ,
    542 P.2d 817 (Ariz. 1975) ...........................................................................25

*SEC v. Monterosso*,
    756 F.3d 1326 (11th Cir. 2014) ..................................................................21

*Spicer v. Tenet Fla. Physician Servs., LLC*,
    149 So.3d 163 (Fla. 4th DCA 2014) .....................................................26, 29

*Spokeo, Inc. v. Robins*,
    578 U.S. 339 (2016) ....................................................................................50

*Sprint Commc'ns Co., L.P. v. APCC Servs, Inc.*,
    554 U.S. 269 (2008) ....................................................................................51

*St. Joe Corp. v. McIver*,
    875 So.2d 375 (Fla. 2004) ..........................................................................25

*State ex rel. U-Haul Co. of W. Va. v. Zakaib*,
    752 S.E.2d 586 (W. Va. 2013) .......................................................33, 34, 35

*Tabler Indus. Com'n of Ariz.*,
    47 P.3d 1156 (Ariz. App. Div. 1, 2002) .....................................................37

*The Hill-Shafer P'ship v. Chilson Family Tr.*,
    799 P.2d 810 (Ariz. 1990) .....................................................................25, 37

*Thermolife Int'l LLC v. Bpi Sports LLC*,
    No. CV-20-02091-PHX-SPL,
    2021 U.S. Dist. LEXIS 31700 (D. Ariz. Feb. 19, 2021) ..............................51

*Thomas v. Montelucia Villas, Ltd. Liab. Co.*,
    302 P.3d 617 (Ariz. 2013) ............................................................24

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..........................................................50, 51

*United Cal. Bank v. Prudential Ins. Co.*,
    681 P.2d 390 (Ariz. Ct. App. 1983) ....................................30, 32

*United States v. Am. Tobacco Co.*,
    166 U.S. 468 (1987) .....................................................................51

*Urquilla-Diaz v. Kaplan Univ.*,
    780 F.3d 1039 (11th Cir. 2015) ..................................................21

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) .............................................24, 25

*Vernon v. Qwest Communs. Int'l, Inc.*,
    857 F.Supp.2d 1135 (D. Colo. 2012) ..........................................35

*Vitale-Renner v. Sixt Rent A Car, LLC*,
    Case No. 20-62289-CIV-CANNON/Hunt,
    2022 U.S. Dist. LEXIS 121322 (S.D. Fla. July 5, 2020) ............28

*W. Distrib. Co. v. Diodosio*,
    841 P.2d 1053 (Colo. 1992) ........................................................24

*Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*,
    152 P.3d 1227 (Ariz. Ct. App. 2007) ..........................................30

*Williamson v. Genentech, Inc.*,
    No. 19-cv-01840-JSC,
    2020 U.S. Dist. LEXIS 46999 (N.D. Cal. Mar. 18, 2020) ..........53


**Statutes and Rules:**

Fla. Stat. §§ 501.201 .......................................................................6

Fla. Stat. § 501.211 ........................................................................41, 44

Restatement (Second) Torts § 928 ................................................................45

28 U.S.C. § 1291 ...............................................................................4

28 U.S.C. § 1332 ...............................................................................4

# INTRODUCTION

Plaintiffs-Appellants rented cars from Defendant-Appellee Sixt Rent A Car, LLC. After their rentals, Sixt demanded that Plaintiffs pay fees for damage to their rental vehicles. Plaintiffs sued Sixt contending that certain fees violated their rental agreements and the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"). The district court granted summary judgment in Sixt's favor and against Plaintiffs because Plaintiffs deposition testimony showed that: (1) the Terms and Conditions at issue ("T&C") were not incorporated into their contracts and thus Plaintiffs could not prove that Sixt breached the T&C; and (2) Plaintiffs did not personally pay any of the fees at issue and thus they could not prove a claim for actual damages under FDUTPA. Plaintiffs' appeal presents two straightforward questions, both of which were correctly decided by the district court.

**First, were the Terms and Conditions incorporated into Plaintiffs' rental agreements? No.** It was Sixt's normal procedure to provide paper copies of a rental agreement Face Page and a T&C to the customer before they signed an electronic signature pad used to capture their signature onto an electronic Face Page. But there is no evidence that this procedure was followed for Plaintiffs' rentals. Plaintiffs testified unequivocally that they were not shown, provided, or told how to access the T&C until after they signed the signature pad (if at all). Below, Plaintiffs contended that Sixt should be bound by those terms under bogus estoppel theories, which the

district court rejected, and which Plaintiffs do not raise on appeal.

Contrary to their appeal, Plaintiffs did not testify that they could not recall what happened; they affirmatively testified that they did not receive and were not told how to access the terms prior to contracting. Plaintiffs also argue that the district court should have considered evidence of Sixt's contractual intent, Sixt's post-contractual conduct, and their rental reservations. But such evidence is irrelevant to analyzing whether Plaintiffs assented to the T&C at the time of contracting. Because there was no *mutual* assent to the T&C, Sixt cannot have breached the T&C; therefore, the district court properly granted summary judgment against Plaintiffs on their contract claims.

**Second, can Plaintiffs pursue claims for actual damages under FDUTPA when they did not pay the fees at issue? No.** Under FDUTPA, a plaintiff must prove that they suffered actual damages caused by the allegedly deceptive conduct. Plaintiffs admitted they did not personally pay the fees at issue. Therefore, the district court correctly held that Plaintiffs cannot prove the causation and actual damages elements of their FDUTPA claims.

At summary judgment, Plaintiffs only argued that they had standing and did not argue, or present evidence to show, that they suffered actual damages. Plaintiffs' lack of standing is an alternative ground upon which to affirm the judgment below.

Plaintiff Philippe Calderon now argues he suffered actual damages by

purchasing a damage waiver at the start of his rental. But Calderon did not complain about this purchase in the district court, and it cannot constitute actual damages. Calderon's pre-rental waiver purchase did not result in a payment of any fees for rental vehicle damage, and could not have been caused by the post-rental fee demand. He also received the benefit of the bargain when Sixt waived a portion of its fee demand. The district court, therefore, did not err in concluding that Calderon cannot prove causation or actual damages.

Plaintiffs Ancizar Marin and Kelli Borel Riedmiller now assert that, under the collateral source doctrine, they suffered actual damages when third parties – Marin's company and Borel's employer – paid certain fees to Sixt. In addition to being waived, this novel argument finds no support in any FDUTPA case or any analogous case. Marin and Borel did not suffer personal losses when third parties made payments to Sixt. The collateral source doctrine cannot be used as a substitute for proof of actual damages, does not confer standing, and does not accord any legal right to recover those third-party payments. Moreover, the prerequisites for and rationale behind the irrelevant collateral source doctrine do not apply here. Had this collateral source argument been raised below, it would have made no difference because Marin and Borel did not pay the fees at issue.

Accordingly, the district court's decision granting summary judgment in Sixt's favor and against Plaintiffs on all their claims should be affirmed.

## <u>STATEMENT OF JURISDICTION</u>

The district court had original jurisdiction under 28 U.S.C. § 1332(d)(2)(A), because the alleged amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the suit is a putative class action in which some members of the proposed classes are citizens of states different from at least one defendant. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this appeal is taken from the district court's final judgment entered in Sixt's favor and against Plaintiffs.

## **STATEMENT OF THE ISSUES PRESENTED ON APPEAL**

I.       Did the district court correctly hold that Plaintiffs cannot prove their contract claims alleging that Sixt breached various Terms and Conditions when the undisputed material facts show that the Terms and Conditions were not incorporated by reference into Plaintiffs' rental agreements?

II.       Did the district court correctly conclude that Plaintiffs cannot prove their damages claims under the Florida Unfair and Deceptive Trade Practice Act when the undisputed material facts show that they did not personally pay the fees at issue?

The answer to both questions on this record is "**Yes**."

# STATEMENT OF THE CASE

## I. COURSE OF PROCEEDINGS AND DISPOSITION BELOW

### A. The Original Complaint Alleged Plaintiffs Did Not Assent To The Terms and Conditions.

In September 2019, Plaintiffs Philippe Calderon ("Calderon") and Ancizar Marin ("Marin") filed a putative class action Complaint against Defendant Sixt Rent A Car, LLC ("Sixt") concerning fees associated with rental vehicle damage Sixt asked them to pay following their rentals ("Fees"). (R:1:1:¶1). Both Plaintiffs asserted claims for breach of contract and violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. ("FDUTPA"). (R:1:23-25:¶¶119-133; R:1:27-30:¶¶141-168).

The Complaint contended that Sixt breached their rental contracts and violated FDUTPA by charging Fees that were listed only in Terms and Conditions Rental Jackets ("Terms and Conditions" or "T&C"), which Plaintiffs argued were not incorporated by reference into their rental agreements because the T&C were provided to Plaintiffs until after they signed the Face Page contract for their rentals. (R:1:10-12:¶¶49-62; R:1:14-16:¶¶75-87; R:1:17:¶101; R:1:24-25:¶¶122-130; R:1:26:¶¶136-140; R:1:27:¶¶142-147).

In November 2019, Sixt filed a motion to dismiss Calderon's claims arguing that, *inter alia*, the T&C were incorporated by reference into his Face Page as a matter of law. (R:30:10). In March 2020, the district court denied the motion to

dismiss Calderon's claims, holding that whether the T&C was incorporated by reference was an issue of fact that depended on whether Calderon received or was given clear direction on how to access the T&C before he signed the Face Page. (R:30:12).

**B.     The First Amended Complaint Alleged Plaintiffs Did Not Assent To The Terms and Conditions.**

In August 2020, Calderon and Marin filed a First Amended Complaint against Sixt raising breach of contract and FDUTPA claims based on the same core allegations ("FAC"). (R:74). The FAC again contended the T&C were not incorporated into Plaintiffs' rental agreements. (R:74:14-17:¶¶57-71; R:74:19-21:¶¶87-102; R:74:23-25:¶¶115-127. The FAC alternatively claimed that, even if the T&C were incorporated by reference, their contracts were breached and consumer protection laws were violated by the Fees. (R:74:41:¶97; R:74:42:¶207).

**C.     The Operative Second Amended Complaint Asserts Claims Founded On The Terms and Conditions.**

In March 2022, current Plaintiffs Calderon, Marin, and Kelli Borel Riedmiller ("Borel") (hereinafter, "Plaintiffs") filed the operative Second Amended Complaint ("SAC"). (R:151). The SAC did not allege whether a copy of the T&C was provided to Plaintiffs, either before or after they signed the Face Page. (R:151:8:¶¶37-39; R:151:11:¶¶57-58; R:151:14-15:¶¶74-75). Unlike the prior complaints, the SAC contended that the T&C were incorporated into Plaintiffs' rental agreements.

(R:151:22:¶¶102-103).

The SAC asserted three causes of action. In Count I, Plaintiffs contended that Sixt breached the T&C by charging and/or collecting Fees that they argue were not authorized by the T&C or were not calculated in a manner consistent with the T&C. (R:151:22-24:¶¶101-113). In Count II, Plaintiffs claimed that Sixt violated FDUTPA by sending letters demanding Plaintiffs pay estimated repair costs and other Fees that they argue were not authorized by the T&C or were not calculated in a manner consistent with the T&C. (R:151:24-26:¶¶114-123). In Count III, Calderon and Borel asserted that Sixt violated FDUTPA by sending letters demanding they pay estimated repair costs and other Fees, which Plaintiffs argue misled them into thinking the vehicle damages had been repaired when they allegedly had not been repaired. (R:151:26-28:¶¶124-132).

Sixt timely filed its Answer and Affirmative Defenses to the SAC, which denied and disputed the merits of Plaintiffs' claims. (R:158).

### D. The District Court Granted Sixt's Motion For Summary Judgment In Sixt's Favor And Against Plaintiffs On All Of Their Claims.

On July 18, 2022, Sixt filed a Motion for Summary Judgment against all claims asserted in the SAC ("Motion"). (R:206). The Motion was supported by a Statement of Material Facts that primarily recounted Plaintiffs' deposition testimony. (R:207). Plaintiffs filed an Opposition to the Motion as well as a Response to Defendant's Statement of Material Facts and Counterstatement of

Material Facts. (R:220; R:222). Sixt filed a Reply supporting the Motion, along with a Reply Statement of Material Facts. (R:226; R:227). On September 20, 2022, the district court issued its Opinion and Order granting the Motion for Summary Judgment. (R:233 ("Opinion")).

The district court granted summary judgment against Plaintiffs on their contract claims because the undisputed material facts showed that Plaintiffs did not assent to the T&C and therefore the T&C were not incorporated into Plaintiffs' rental agreements and Sixt could not have breached the T&C. (R:233:3-8). The district court held that "[Sixt's] intent to be bound by the Terms and Conditions is of no consequence where the other requirements of incorporation by reference are not met.…" (R:233:9). The district court also rejected Plaintiffs' arguments that Sixt was "contractually or judicially estopped from arguing that the Terms and Conditions were not incorporated." (R:233:8-10). Plaintiffs have not raised those estoppel arguments on appeal. *See* Brief of Appellants, Doc. 15 ("Plaintiffs' Brief" or "Pl.Br.").

The district court granted summary judgment against Plaintiffs on their FDUTPA damages claims because the undisputed material facts showed that Plaintiffs did not personally pay any of the Fees at issue and therefore Plaintiffs could not prove that they suffered actual damages. (R:233:10-12). The district court rejected the arguments of Marin and Borel that they had standing to sue even though

third parties paid Fees on their behalf because, regardless of whether they had standing, they did not have actual damages. (R:233:11). The district court also held that Calderon did not suffer actual damages through his purchase of a Partial Damage Waiver because he received the benefit of the bargain for that purchase and he did not pay any of the Fees by virtue of purchasing that waiver. (R:233:12).

The district court granted summary judgment in Sixt's favor and against Plaintiffs on their claims for declaratory or equitable relief under FDUTPA for lack of standing because Sixt was not trying to collect from them and there was no real and imminent risk of future irreparable harm. (R:233:12-14). Plaintiffs did not appeal that ruling.

Finally, the district court granted summary judgment in Sixt's favor and against Plaintiffs on their claims for declaratory or equitable relief under their contracts for lack of standing because the T&C were not incorporated into their agreements. (R:233:14-15). Plaintiffs did not appeal this decision either.

The district court entered a Final Judgment in Sixt's favor and against Plaintiffs, dismissing the action with prejudice on October 3, 2022. (R:234).

Plaintiffs filed a Notice of Appeal on October 20, 2022. (R:235).

## II. STATEMENT OF FACTS

### A. Sixt's Usual Rental Agreement and Rental Process At The Time Of Plaintiffs' Rentals.

The Sixt Rental Agreement normally is comprised of two documents: (a) a

Face Page, which provides the terms that are specific to the customer's rental based on their selections; and (b) a Terms and Conditions Rental Jacket, which is a preprinted booklet containing the commercial, legal, and financial terms that are generally applicable to rentals at the time and location(s) of its circulation. (R:227:3:¶1) (citing R:102:4-5,9-10:¶¶11,24-26; R:102-3 (example Face Page); R:102-4 (example T&C)).

The following is a general overview of the routine checkout process for renting a vehicle from Sixt at the time of Plaintiffs' rentals. (R:227:2:¶2) (citing R102:4-5:¶11). When a customer arrived at the Sixt rental counter, they would be greeted by a Sixt agent, who would ask for their name, driver's license, and reservation (if any). (R:227:2:¶3). The agent would look up the customer's reservation, and enter the customer's information into Sixt's computer system. (R:227:2:¶4). The agent then would discuss various vehicle, product, service, and protection options with the customer, and enter the customer's selections into a computer system. (R:227:2:¶5). The agent would disclose the rental price to the customer, ask the customer to insert their credit card into a credit card reader, and ask the customer to confirm the amount. (R:227:3:¶6). After the credit card information was processed, a paper copy of the Face Page would be printed. (R:227:3:¶7). The agent would place the paper copy of the Face Page and a paper copy of the T&C on the counter for the customer to review. (R:227:3:¶8). Next, the

agent would review terms of the rental with the customer. (R:227:3:¶9). If the customer accepted the terms of the rental, they would sign the Face Page using an electronic signature pad. (R:227:3:¶10). The agent would hand the customer the keys to the rental vehicle along with the paper copy of the Face Page and the paper copy of the T&C. (R:227:3:¶11).

## B. Calderon's Car Rental From Sixt In Florida.

### 1. Calderon Was Not Shown, Provided, Or Told How To Access The Terms And Conditions Before He Signed The Electronic Signature Pad.

Calderon rented a car from Sixt at its location in West Palm Beach Florida between April 1 and 4, 2016. (R:227:3-4:¶12). Calderon rented the car to take a personal trip with his family. (R:227:3:¶13). At the rental counter, Calderon told the agent he had a reservation, and provided his identification and credit card to the agent. (R:227:4:¶14).

As shown on the Face Page of his rental agreement, Calderon agreed to purchase an optional product for his rental called a "Partial Damage Waiver" or "PDW" at a rate of $9.99 per day, for a total of $29.97 for the entire rental. (R:227:4:¶15). The Face Page for Calderon's rental states that, when a customer purchases PDW, subject to certain terms and conditions, Sixt agrees to deduct from any damage claim against the customer the first $500 of charges such that the customer would only be responsible for any charges above $500. (R:227:4:¶16).

PDW is not insurance and does not result in a payment to Sixt on the customer's behalf when the waiver is applied. (R:227:4:¶17).

Calderon paid for the rental using his personal credit card. (R:227:4-5:¶18). The agent then told Calderon to sign an electronic signature pad. (R:227:5:¶19). Calderon testified that he was not shown any papers – not the Face Page, and not the T&C – before he signed the signature pad. (R:227:5:¶20). After Calderon signed the signature pad, the agent handed Calderon a "packet of papers" and the keys to the vehicle. (R:227:5:¶22). Calderon firmly testified to those dispositive undisputed facts in his deposition:

> **Q.** [D]id you receive that paperwork [the Face Page and the T&C] before or after you signed the signature pad?
>
> **A.** After I signed the pad.
>
> …
>
> **Q.** Did the agent hand you the keys to the rental vehicle when she handed you the packet of papers [the Face Page and the T&C]?
>
> **A.** Yes, sir.
>
> …
>
> **Q.** Did the rental agent at the counter show you any pieces of paper before you signed the signature pad?
>
> **A.** No, sir.

(R:207-1:p.42:16-25, p.43:11-18, p.45:14-16, pp.51:14-52:6).

### 2. Calderon Did Not Pay Any Of The Fees At Issue.

A few days after his rental, Sixt emailed Calderon a notice indicating that new damage to his rental vehicle had been identified upon its return and asking him to fill out a damage report, which his daughter completed and returned on his behalf, denying liability for the damage. (R:227:6:¶23).

On January 30, 2017, Sixt sent an email to Calderon's email address attaching a letter asserting a claim for damage compensation against him, and enclosing an invoice for the damages with some supporting documentation. (R:227:6:¶24). The invoice enclosed with Sixt's damage claim letter asked Calderon to pay a total of $631.35 based on the sum of the following charges and waiver:

1. $667.24 for repair costs per engineer report based on the enclosed repair estimate;

2. plus $170.00 for administrative fee;

3. plus $102.60 for loss of use;

4. plus $166.81 for diminution in value;

5. plus $25 for an engineer fee based on the enclosed invoice from The Doan Group;

6. minus $500 based on the PDW.

(R:227:6-7:¶25). Because Calderon purchased and paid for PDW, Sixt waived Calderon's responsibility for $500 of damage to the rental vehicle. (R:227:7:¶26).

Calderon admitted that he never paid any of the charges invoiced by Sixt for damage to his rental vehicle. (R:227:7:¶27).

On January 25, 2018, Sixt cancelled its claim against Calderon, deleted all of the charges from his account, and reduced the balance of his account to zero. (R:227:9:¶34).

### C. Marin's Car Rental From Sixt In Arizona.

#### 1. Marin Was Not Shown, Provided, Or Told How To Access The Face Page Or The Terms And Conditions Before He Signed The Electronic Signature Pad.

Marin is an artist who owns a business called Art by Ancizar, Incorporated. (R:227:14:¶44). Marin rented a car from Sixt at the Phoenix Sky Harbor International Airport in Arizona between March 5 and 7, 2019. (R:227:14:¶45). Marin rented the car for a business trip to a gallery exhibition. (R:227:14:¶46).

When Marin arrived at the rental counter, he told the agent he had a reservation and the agent asked for his identification and a credit card. (R:227:14:¶47). Marin used his business's credit card to pay for the rental. (R:227:14:¶48).

"Behind the counter [the agent] processed" his rental, and the agent had Marin accept the credit card charges by signing "an electronic black box" with a "stylus pen." (R:227:14:¶49). Marin testified that he had "no idea" what he was signing because that was "never explained" to him. (R:227:14-15:¶50). Marin testified that he was not shown or handed any papers before he signed the black box. (R:227:15:¶51).

Marin clearly testified that he was not shown or handed *any* contract terms before he signed the signature pad:

> **Q.** Please describe what happened when you first arrived at the rental counter.
>
> > **A.** I told them I had a reservation. They asked for ID, credit card.
>
> **Q.** Then what happened?
>
> > A. Behind the counter they processed whatever. They had me sign an electronic black box on my side.
>
> **Q.** Do you remember anything else that happened while you were at the rental kiosk?
>
> > A. No; normal.
>
> **Q.** Did you have to press any buttons accepting credit card charges or anything like that?
>
> > **A.** No. I believe that came up in that black box. It was a digital box, I recall, one of those boxes you sign with a stylus pen, I believe.
> >
> > …
>
> **Q.** When you signed the black box with the stylus what were you signing?
>
> > **A.** I have no idea. I was never explained.
> >
> > …
>
> **Q.** Before you signed the black box did they hand you any papers?
>
> > **A.** No.
>
> **Q.** Before you signed the black box did they show you any papers?
>
> > **A.** No.

(R:207-6:Tr.18:11-25, Tr.19:5-7, Tr.19:12-17).

After he signed the black box, Marin "went on to the get the car." (R:227:15:¶52). Marin testified that he did not think he was handed any paperwork for his rental before he left the rental counter to get the car. (R:227:15:¶53).

Marin testified that he "never had a copy of the Sixt Terms and Conditions Rental Jacket relating to this rental." (R:227:15-16:¶54). He never saw the Face Page or the T&C during his rental. (R:207-6:Tr.21:18-23:24). The first time Marin saw the Face Page and the T&C was a few days before his deposition. *Id.*

### 2. Marin Did Not Pay Any Of The Fees At Issue.

On April 16, 2019, Sixt sent Marin an email attaching a letter advising him that upon return of his rental vehicle new damage was documented by the rental branch, asserting a claim for damage compensation against him, and enclosing an invoice for the damages with some supporting documentation. (R:227:16:¶55). The invoice enclosed with Sixt's damage claim letter asked Marin to pay a total of $708.62 based on the sum of the following charges:

1. $519.00 for repair costs;

2. plus $114.62 for loss of use; and

3. plus a $75.00 administrative fee.

(R:227:16:¶56).

Marin submitted Sixt's damage claim to his insurance company, Allstate, for

coverage. (R:227:16:¶57). Allstate paid Sixt a total of $519.00 to cover the repair costs. (R:227:16-17:¶58).

On June 13, 2019, Sixt sent Marin another claim letter and a new invoice asking him to pay the outstanding loss of use charge and administrative fee. (R:227:17:¶59). In June 2019, Art by Ancizar, Incorporated paid Sixt a total of $189.62 to cover the loss of use and administrative fees. (R:227:17:¶60). Marin never personally paid Sixt any money. (R:227:17:¶61).

**D.    Borel's Car Rental From Sixt In Colorado.**

   **1.    Borel Was Not Shown, Provided, Or Told How To Access The Terms And Conditions Before She Signed The Electronic Signature Pad.**

Borel is a wholesale sales manager for the Elope division of Fun.com. (R:227:18:¶63). Borel rented a car from Sixt at the Denver airport in Colorado between June 10 and 14, 2019. (R:227:18:¶64). Borel rented the car for a business trip to her company's headquarters. (R:227:18:¶65). Borel's employer, Elope, paid for her rental. (R:227:18:¶66).

When Borel was asked what happened at the Sixt counter, Borel testified that she has "rented so many cars over the years" and that she "do[es] not remember the specifics of this particular rental because [she has] rented so often." (R:227:18:¶67). Borel testified that she does not "specifically remember" signing anything at the rental counter. (R:227:18:¶68). When Borel was shown a copy of the original Face

Page for her rental, she confirmed that it bears her signature and that she "obviously" signed something electronically at the rental counter. (R:227:18-19:¶69). Borel did not remember being shown the Face Page before she signed it. (R:227:19:¶70). Borel received copies of the Face Page and the T&C for the first time when she received the keys to the Kia Sorento. (R:227:19:¶71).

Borel unambiguously testified that she first saw the Face Page and the T&C *after* she signed the electronic signature pad when those documents were handed to her along with the keys to the vehicle:

> **Q.** Was the first time that you saw the long printed receipt [the signed Face Page] when they gave it to you with the car keys?
>
> **A.** I would say yes, that's the first time I touched that receipt.
>
> **Q.** Okay. And that was also the same time when they gave you the jacket [the T&C]?
>
> **A.** Yes.
>
> **Q.** And that was the first time you'd seen the jacket [the T&C] was when they gave it to you with the car keys?
>
> **A.** Yes. Yes.

(R:207-7:Tr.21:17-22:2; R:207-7:Tr.14:10-23 (Borel testifying that she was handed the "jacket" and the "receipt" with the keys to the vehicle)).

The Kia Sorento would not start, so Sixt gave Borel a Mercedes Benz GLC 300 to rent. (R:227:19:¶72). Borel was provided an updated Face Page that listed the same contract number as the original Face Page, and that listed the Mercedes Benz

as the rental vehicle. (R:227:19-20:¶73). Borel did not sign a new contract for the Mercedes Benz. (R:227:20:¶74).

### 2. Borel Did Not Pay Any Of The Fees At Issue.

On July 3, 2019, Sixt sent Borel an email attaching a letter advising her that upon return of her rental vehicle new damage was documented by the rental branch, asserting a claim for damage compensation against her, and enclosing an invoice for the damages with some supporting documentation. (R:227:20:¶75). The invoice enclosed with Sixt's damage claim letter asked Borel to pay a total of $523.75 based on the sum of the following charges:

1. estimate of repair in the amount of $365.00 based on the enclosed repair estimate;

2. plus diminution in value of $91.25;

3. plus an administrative fee of $45.00; and

4. plus an estimate / appraisal fee of $22.50.

(R:227:20:¶76).

Elope paid the full amount of Sixt's invoice to Borel. (R:227:20:¶77). Borel never personally paid any money to Sixt. (R:227:20-21:¶78).

## III. STANDARD OF REVIEW

On appeal, this Court "review[s] a district court's grant of summary judgment *de novo*." *Dolphin Ltd. Liab. Co. v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1247 (11th Cir. 2013). "In conducting this review," this Court "view[s] the facts and all

reasonable inferences from the record in the light most favorable to the non-moving party." *Id.* But this Court is not "constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-459 (11th Cir. 1994). "Speculation or conjecture cannot create a genuine issue of material fact, and a 'mere scintilla of evidence' in support of the nonmoving party cannot overcome a motion for summary judgment." *SEC v. Monterosso,* 756 F.3d 1326, 1333 (11th Cir. 2014) (citation omitted). Rather, "the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Beal*, 20 F.3d at 459.

## SUMMARY OF THE ARGUMENT

The district court properly granted summary judgment in Sixt's favor and against Plaintiffs because two undisputed material facts disproved essential elements of their contract and FDUTPA claims. First, Plaintiffs cannot prove their contract claims because Plaintiffs' deposition testimony showed they did not assent to the T&C that allegedly were breached and thus Sixt cannot have breached those unenforceable terms. Second, Plaintiffs cannot prove their FDUTPA claims because Plaintiffs admitted under oath that they did not personally pay any of the Fees and

thus they did not suffer any actual damages as a result of the alleged conduct.

Plaintiffs argue that the district court erred in holding that the T&C were not incorporated by reference into their rental agreements for three primary reasons. First, Plaintiffs assert that the court ignored Borel's receipt a copy of the T&C at the rental counter. The district court actually held that, consistent with the applicable Colorado law, the T&C was not incorporated by reference because Borel did not receive the T&C until *after* she signed the rental agreement.

Second, Plaintiffs argue that the district court should not have disregarded evidence that Sixt intended to incorporate the T&C, as shown by the language of the Face Page, its standard procedures, and its post-contracting conduct in demanding Fees from the Plaintiffs. Evidence of Sixt's intent or actions as if the terms were enforceable, however, is not proof Plaintiffs assented to those terms. Plaintiffs unequivocally admitted that they did not see, did not receive, and were not told how to access the T&C before signing the electronic signature pad, and there was no proof Sixt's standard procedures were followed for Plaintiffs' rentals.

Third, Plaintiffs assert that the district court erred by ignoring evidence that they had access to the T&C because, unbeknownst to them, copies were available at the rental location. However, under the state laws applicable to their rentals, each of which must be analyzed individually, the mere availability of a collateral document is insufficient to incorporate its terms. Because Plaintiffs were totally unaware of the

T&C, it makes no difference whether they hypothetically could have accessed them. The district court thus correctly concluded that Plaintiffs did not accept the T&C.

As to their FDUTPA claims, Plaintiffs did not argue in the district court that they suffered any actual damages. Instead, Plaintiffs argued they had standing based on payments made by third parties. The district court correctly held that, irrespective of whether Plaintiffs have standing, they did not suffer actual damages and therefore cannot prove their FDUTPA claims. Plaintiffs waived their right to appeal the crucial issue of whether they suffered any actual damages. The district court's decision may be affirmed on that basis, and on the alternative basis that Plaintiffs do not have standing to bring FDUTPA damages claims.

Calderon's new claim that the amount he paid for PDW qualifies as "actual damages" was not raised in the trial court, and is a *non sequitur*. The purchase of PDW before the rental could not have been caused by the imposition of Fees after the rental. Calderon also was not damaged by that purchase because he indisputably received the benefit of the bargain in accordance with the terms of the Face Page.

The collateral source theory first presented by Marin and Borel on appeal was waived too. Nevertheless, Plaintiffs do not cite a single FDUTPA case to support their theory that payments made by third parties constitute actual damages they suffered. FDUTPA requires proof of an actual loss suffered by the plaintiff, and it is undisputed that Marin and Borel did not lose any money when non-parties made

those payments. The collateral source rule cannot be used as a substitute for proof of actual damages where none exist, and does not apply here in any event.

Accordingly, the district court's Opinion granting summary judgment and Final Judgment in Sixt's favor and against Plaintiffs should be affirmed.

## **ARGUMENT**

**I.  SUMMARY JUDGMENT AGAINST PLAINTIFFS ON THEIR CONTRACT CLAIMS SHOULD BE AFFIRMED BECAUSE PLAINTIFFS CANNOT PROVE SIXT BREACHED TERMS AND CONDITIONS THEY DID NOT ACCEPT.**

Plaintiffs rented cars in three different states: Calderon rented in Florida; Marin rented in Arizona; and Borel rented in Colorado. The laws of the states in which Plaintiffs rented vehicles from Sixt govern the formation and interpretation of their rental contracts. *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (holding that Florida follows the *lexi loci contractus* doctrine).

The elements of a breach of contract claim that a plaintiff must prove in Florida, Arizona, and Colorado include: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citation omitted). *See also Thomas v. Montelucia Villas, Ltd. Liab. Co.*, 302 P.3d 617, 621 (Ariz. 2013); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

In each of those states, an enforceable contract requires an "offer, acceptance, consideration, and sufficient specification of the essential terms." *Vega*, 564 F.3d at

1272 (citing *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)). *See also Savoca Masonry Co. v. Homes & Son Constr. Co.*, 542 P.2d 817, 819 (Ariz. 1975); *Doe v. Univ. of Denver*, 516 P.3d 946, 953 (Colo. Ct. App. 2022). And there must be mutual assent to those essential terms. *See David v. Richman*, 568 So.2d 922, 924 (Fla. 1990); *The Hill-Shafer P'ship v. Chilson Family Tr.*, 799 P.2d 810, 814 (Ariz. 1990); *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. May 16, 2022). That missing essential element – *mutual* assent to the T&C – dooms Plaintiffs' contract claims.

Plaintiffs contend that Sixt breached provisions of the T&C concerning the Fees. (R:151:22-24:¶¶102-112). Sixt's routine rental procedure at the time of Plaintiffs' rentals, when followed, provided the renter an opportunity to review paper copies of the Face Page and the T&C *before* the renter used an electronic signature pad to sign the Face Page, which incorporates by reference the T&C. (R:227:2-3:¶¶1-11). Here, however, it is undisputed that the Plaintiffs did not receive and were not told how to access the T&C at the rental counter *before* they electronically signed the signature pad. (R:227:2,4-5:¶¶19-22,49-54,69-71). Plaintiffs thus cannot have assented to the T&C and the T&C were not incorporated by reference. Because the T&C provisions concerning the Fees were not incorporated by reference into their agreements, it follows that Sixt cannot have breached those provisions and summary judgment was properly granted in Sixt's

favor on Plaintiffs' contract claims.

## A. The Terms And Conditions Were Not Incorporated By Reference Into Plaintiffs' Rental Agreements.

The Face Page for each Plaintiff's rental refers to and purports to incorporate the T&C in circulation at the time and location of their rental: "By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this Agreement." (R:207-1:166; R:207-6:134; R:207-7:147). Whether a T&C was incorporated into each Plaintiff's rental agreement depends on the law of the state where the rental occurred and the facts surrounding the execution of each Face Page. *See Fioretti*, 53 F.3d at 1235. Plaintiffs' testimony proves that they did not assent to the T&C and thus the T&C were not incorporated by reference into their rental agreements.

### 1. Calderon Was Not Provided Or Told How To Access The Terms And Conditions Before He Signed The Signature Pad.

Under Florida law, for a collateral document to be incorporated by reference into an agreement, the agreement "must (1) specifically provide that it is subject to the incorporated [collateral] document and (2) the collateral document to be incorporated must be sufficiently described or referred to in the incorporating agreement so that the intent of both parties may be ascertained." *Spicer v. Tenet Fla. Physician Servs., LLC*, 149 So.3d 163, 166 (Fla. 4th DCA 2014) (alteration in original).

As noted in its Opinion (R:233:5), the district court previously held, in denying Sixt's Motion to Dismiss Calderon's claims, that the Face Page did not sufficiently describe the T&C, and that whether T&C was incorporated into the rental agreement is a question of fact. *See Calderon v. Sixt Rent a Car, LLC*, No. 19-cv-62408, 2020 U.S. Dist. LEXIS 24247, at *16-17 (S.D. Fla. Feb. 12, 2020). The district court further held that, for the T&C to be incorporated by reference into the Face Page, Calderon had to "receive [the T&C], or else be given clear direction on how to access it" before he signed the signature pad. *Id.* (citations omitted). Both at summary judgment and on appeal, Plaintiffs have not challenged that prior ruling or cited any contrary cases. *See* R:220:4-14; Pl. Br. at 25.

The record evidence on summary judgment proved that Calderon did not receive and was not told how to access the T&C before he signed the signature pad. Calderon repeatedly alleged that he received the T&C only after he electronically signed the Face Page. (R:1:11-12:¶¶54-58; R:74:15-16:¶¶62-70; R:151:8:¶¶37,39). Consistent with those allegations, Calderon definitively testified that he did not receive and was not shown the T&C before he signed the signature pad. (R:227:5:¶20).

Contrary to Plaintiffs' Brief (at 21, 26), Calderon did not attest to a lack of memory and there were no genuine disputes of material fact because Calderon unambiguously testified that he was not shown *any* papers before he signed the rental

agreement. (R:227:5:¶20). Nor was there any directly "contradictory evidence" presented by Plaintiffs (Pl.Br. at 31), such as testimony from the employee who assisted Calderon with his rental. *Compare Vitale-Renner v. Sixt Rent A Car, LLC,* Case No. 20-62289-CIV-CANNON/Hunt, 2022 U.S. Dist. LEXIS 121322, at *21-27 (S.D. Fla. July 5, 2020) (post-trial opinion denying motion to compel arbitration based on findings that plaintiff did not agree to Sixt's T&C because her credible testimony that she did not receive any documents before signing the signature pad trumped credible testimony from the Sixt employee, who could not recall her particular rental, concerning Sixt's routine practice of showing the contract terms to customers before they signed). Therefore, the summary judgment record showed that, under Florida law, the T&C was not incorporated by reference into Calderon's rental agreement.

Plaintiffs also argue that Calderon "had access to" the T&C since a copy of the T&C in effect at the time of his rental was available at the rental counter upon request. *See* Pl.Br. at 10-11, 29. Plaintiffs do not cite any Florida law to support their position that a document is incorporated by reference as long as it is "available"—an argument that is undermined by the case it cites, *BGT Group, Inc. v. Tradewinds Engine Services, LLC*, 62 So.3d 1192 (Fla 4th DCA 2011) (cited by Pl.Br. at 20)

In *BGT*, the Florida appellate court held that "terms and conditions" that a contract indicated were "attached" were not incorporated by reference because they

were not in fact attached and "BGT failed to provide the terms and conditions *during the negotiating process*; thus the sales contract was formed without Tradewinds ever having seen them." 62 So.3d at 1195 (emphasis added).

Similarly, in *Spicer*, the Florida appellate court held that the collateral document was not incorporated by reference because it was not disclosed to the employee until *after* she signed an employment agreement. 149 So.3d at 167.

*Spicer* and *BGT* show that the mere availability of a collateral document is not sufficient to incorporate the collateral document by reference under Florida law. *See also Calderon*, 2020 U.S. Dist. LEXIS 24247, at *16-17 (rejecting the "access to" theory under Florida law) (quoting *Bacon v. Avis Budget Grp., Inc.*, 357 F.Supp.3d 401, 424 (D. N.J. 2018) (holding that rental jacket was not incorporated by reference into rental agreement under Florida law as announced in *Spicer*), *aff'd*, 959 F.3d 590, 601-02 (3d Cir. 2020) ("a party cannot assent to something he does not know exists," affirming refusal to enforce arbitration agreement in rental jackets not sufficiently described in rental agreements and not provided to customers before they signed rental agreements)). Because mere "access to" the T&C was insufficient to incorporate its terms by reference, Plaintiffs' lengthy discussion of Sixt's discovery responses concerning "access to" or "availability" of the T&C is irrelevant, and the district court did not err by ignoring such evidence. *See* Pl.Br. at 7-10, 30.

Therefore, the district court correctly held that the T&C was not incorporated

into Calderon's rental agreement.

### 2. Marin Did Not Have Any Notice Of The Terms And Conditions Before He Signed The Signature Pad.

Under Arizona law, for an agreement to incorporate a collateral document by reference, the "reference must be clear and unequivocal and must be called to the attention of the other party, he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *United Cal. Bank v. Prudential Ins. Co.*, 681 P.2d 390, 420 (Ariz. Ct. App. 1983) (citation omitted). "While it is not necessary that a contract state specifically that another writing is 'incorporated by this reference herein,' the context in which the reference is made must make clear that the writing is part of the contract." *Id.* Arizona law does not require that the contracting party "see the incorporated document if the document is easily available." *Edwards v. Vemma Nutrition*, No. CV-17-02133-PHX-DGC, 2018 U.S. Dist. LEXIS 15371, at *9 (D. Ariz. Jan. 30, 2018) (citing *Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*, 152 P.3d 1227, 1230 (Ariz. Ct. App. 2007)). "But an incorporated document, even if it is easily available, will not be incorporated by reference if it is not called to the attention of the contracting party." R:233:6 (citing *Cottonwood Ctrs. Inc. v. Klearman*, No. CIV 18-252-TUC-CKJ, 2018 U.S. Dist. LEXIS 179047, at *12-16 (D. Ariz. Oct. 17, 2018)).

Like the contracting party in *Cottonwood*, the T&C was not called to Marin's

attention and he had no notice of its provisions. *See* 2018 U.S. Dist. LEXIS 179047, at *12-16 (terms and conditions that was emailed to contracting party with various attachments, including the agreement it signed, was not incorporated by reference because it was not called to the attention of the contracting party). Marin testified that when he signed the electronic signature pad, he had "no idea" what he was signing because it "was never explained." (R:227:14-15:¶50). Marin further testified that he was never shown or handed a copy of the Face Page or the T&C at any point during his rental. (R:227:15-16:¶¶51-54). The first time he ever saw those documents was around the time of his deposition. (R:207-6:Tr.21:18-23:24).

Had Marin been shown the Face Page or signed a paper copy of the Face Page that referenced the T&C, he arguably would have been on notice of the T&C and thus bound by its terms. *Compare Lucas v. Hertz Corp.*, 875 F.Supp.2d 991, 998-99 (N.D. Cal. 2012) (renter who signed a paper rental agreement referencing conditions in a folder jacket was bound by the folder jacket's terms despite claiming that he never received or did not receive the folder jacket until after he signed the agreement) (applying California law, which has the same incorporation-by-reference standard as Arizona). But unlike the renter in *Lucas*, Marin did not sign a paper rental agreement and further testified that he was not shown the Face Page before he signed the "electronic black box." (R:227:14-16:¶¶49-54). Because the T&C was not called to Marin's attention at any point during the transaction and thus he could not have

consented to those terms under Arizona law, the T&C was not part of any contract between Marin and Sixt. *See Cottonwood*, 2018 U.S. Dist. LEXIS 179047, at *12-16; *United Cal. Bank*, 681 P.2d at 420.

By emphasizing that the T&C was available to Marin, Plaintiffs ignore the first half of the incorporation by reference test under Arizona law. *See* Pl.Br. at 20. It does not matter whether the T&C was "easily available" to Marin or he hypothetically had "access to" it because he never received the Face Page, he never saw any reference to the T&C, and the T&C were never called to his attention. *Cottonwood*, 2018 U.S. Dist. LEXIS 179047, at *12-16; *United Cal. Bank*, 681 P.2d at 420. Even if the T&C Marin never received were available somewhere at the rental location, he did not assent to the T&C under Arizona law. *Id.* Therefore, the district court properly found that Marin did not agree to the T&C.

### 3. Borel Was Not Provided Or Told How To Access The Terms And Conditions Before She Signed The Signature Pad.

Under Colorado law, for a collateral document to be incorporated by reference into a contract, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *French*, 509 P.3d at 449. "Accordingly, for contract terms outside the four corners of a contract to be incorporated by reference into the contract, the terms to be incorporated generally must be clearly and expressly identified." *Id.* "General or oblique references to a document to be

incorporated, in contrast, are usually insufficient to support a finding that the document was incorporated by reference." *Id.* at 450 (citing, *inter alia*, *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 752 S.E.2d 586, 595-598 (W. Va. 2013) (mere mention of a separate addendum in rental contracts was insufficient to incorporate the addendum by reference because renters were given the addendum only after they signed a rental contract)).

Tellingly, Plaintiffs' Brief does not address *French*, even though it is the leading Colorado Supreme Court opinion on the doctrine of incorporation by reference and was cited by the district court in its Opinion below. (R:233:7-8). In *French*, the court held that a patient did not assent to the incorporation of prices from the hospital's chargemaster into the admission forms she signed because, *inter alia*, the chargemaster was not provided or otherwise disclosed to her at the time of contracting. *See* 509 P.3d at 450-451 ("She assuredly could not assent to terms about which she had no knowledge and which were never disclosed to her.").

In reaching this decision, the Colorado Supreme Court endorsed the instructive holding of *Zakaib* – an opinion of the West Virginia Supreme Court addressing incorporation by reference in the context of vehicle rentals – that "[a]n oblique reference to a separate, *non-contemporaneous* document is insufficient to incorporate the document into the parties' final contract." *French*, 509 P.3d at 450 (quoting *Zakaib*, 752 S.E.2d at 595) (emphasis added). In *Zakaib*, the West Virginia

Supreme Court held that U-Haul's rental jacket, which it called an "Addendum," was not incorporated by reference because U-Haul provided customers the "Addendum only after the Rental Agreement had been executed" and thus customers could not have consented to its terms. 752 S.E.2d at 598.

Like the patient in *French*, and the renters in *Zakaib*, Borel was not provided a copy of or told how to access the T&C *before* she signed the Face Page. (R:227:19:¶¶70-71). Although Borel did not recall receiving any paperwork before she signed the signature pad, Borel also testified affirmatively that she saw and received the T&C for the "first time" *after* she signed the signature pad. *See id.* Therefore, the district court did not err in concluding that the T&C was not incorporated by reference into Borel's rental agreement under Colorado law. *See French*, 509 P.3d at 449-450 (citing *Zakaib*, 752 S.E.2d at 598).

Plaintiffs' factual and legal arguments concerning Borel's rental agreement miss the mark. First, Plaintiffs misrepresent the district court's fact analysis. Omitting important text from the court's decision, Plaintiffs assert that the district court found that "there is 'no record evidence' that Borel 'received or had access to' the T&C," and overlooked evidence that Borel received a copy of the document at the rental counter. *See* Pl.Br. at 22. The district court actually held that there was "no record evidence that could support an inference that she received or had access to the T&C *before signing*" and recognized that the record evidence concerning her

transaction – her testimony – only indicated that "she did not receive the [T&C] until *after* signing." (R:233:7-8) (emphasis added).

Plaintiffs do not cite any cases supporting their legal argument that Borel's receipt of the T&C *after* she signed the Face Page is sufficient to incorporate those terms by reference (Pl. Br. at 29-30), and binding Colorado precedent decidedly rejects their view. *See French*, 509 P.3d at 449-450 (citing *Zakaib*, 752 S.E.2d at 598). Likewise, Plaintiffs' assertion that the mere availability of the T&C was sufficient to incorporate its terms is not supported by any legal citation and runs afoul of the principles announced in *French*. *See id.* Because Borel was not shown, handed, or told how to access the T&C *before* she signed the Face Page, it does not matter whether the document was available on the premises. *See id.*[1]

Accordingly, the district court did not err in holding that Borel could not prove that Sixt breached T&C that she did not accept.

---

[1] The Colorado cases cited in Plaintiffs' Brief (at 23, 26, 29-30) are also inapposite because they: did not address incorporation by reference at all (*Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1235 (Colo. 1998)); the issue of incorporation by reference was undisputed (*Lane v. Urgitus*, 145 P.3d 672, 681 (Colo. 2006)) (enforcing arbitration agreements between "sophisticated" persons where it was undisputed that membership application incorporated organization's ethical code and arbitration manual); they involved commercial entities with a prior course of dealing, which the Parties here did not (*Great W. Sugar Co. v. N. Nat'l Gas Co.*, 661 P.2d 684, 690-91 (Colo. App. 1982)); and they involved consumers who had notice of and were told how to access the incorporated terms (*Vernon v. Qwest Communs. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1160 (D. Colo. 2012)).

**B. Plaintiffs' Undisputed Testimony Proves That The Terms And Conditions Were Not Incorporated By Reference Into Their Rental Agreements.**

The only evidence of what happened during Plaintiffs' particular rentals – Plaintiffs' unrebutted testimonial admissions – conclusively demonstrates that Plaintiffs did not receive and were not told how to access the T&C until after they signed the signature pad (if at all). (R:233:5). Given the absence of contrary evidence, no reasonable factfinder could conclude that Sixt's normal procedures were followed for their rentals. Accordingly, the district court did not err in disregarding the immaterial evidence concerning Sixt's usual procedures, Sixt's intent, Sixt's post-contractual conduct, or Plaintiffs reservations that are discussed in Plaintiffs' Brief (at 21-31).

At summary judgment, Plaintiffs failed to prove that they assented to the T&C for their rentals. Plaintiffs did not even argue that T&C were incorporated by reference, that they intended to incorporate the T&C, or that they were bound by the T&C. (R:220:1-3,14-16). Instead, Plaintiffs argued that *Sixt* was bound by the T&C based on its contractual intent and was estopped from arguing that the T&C were not part of their rental agreements. *Id.* The district court properly rejected these arguments, which are not raised on appeal.

In their Brief on appeal (at 22-28), Plaintiffs challenge the district court's conclusion that "Defendant's intent to be bound by the T&C is of no consequence

where the other requirements of incorporation by reference are not met.…"
(R:233:9). However, Evidence of Sixt's unilateral intent is insufficient to prove
incorporation of the T&C by reference as a matter of law because there must be
*mutual* assent to incorporate a collateral document. *See David*, 568 So.2d at 924;
*Hill-Shafer*, 799 P.2d at 814; *French.*, 509 P.3d at 449.

Next, Plaintiffs argue the district court erred by refusing to consider
post-rental conduct of the Parties. *See* Pl.Br. at 25. The cases cited by Plaintiffs do
not stand for the proposition that parties' post-contractual conduct is relevant to
determining whether they agreed to incorporate a collateral document by reference
as that issue was not raised in any of those decisions. *See id.* at 26 (citing, *inter alia*,
*Hirsch v. Jupiter Golf Club LLC*, 232 F.Supp.3d 1243,1252-53 (S.D. Fla. 2017)
(examining conduct of parties to interpret text of agreement); *Great W. Sugar*, 661
P.2d at 691 (examining course performance to determine if contract was breached,
but examining text of the contract to determine if orders were incorporated by
reference); *Tabler Indus. Com'n of Ariz.*, 47 P.3d 1156, 1159-60 (Ariz. App. Div. 1,
2002) (analyzing whether parties intended oral agreement to be binding with a
subsequent memorialization in writing)).

Even if Sixt's post-contractual conduct – such as sending demand letters
referencing Plaintiffs' "rental agreements" (but not the T&C specifically), asking
Plaintiffs to pay various Fees that they assert are only recoverable under the T&C,

and collecting payments for those Fees from third parties – was consistent with the T&C or was undertaken with the mistaken assumption that Plaintiffs had accepted the terms, that does not prove that *Plaintiffs* assented to the T&C at the time of contracting. *See* Pl.Br. at 39. In other words, just because Sixt acted like the T&C were enforceable does not make it so because it takes two to tango.

Nor is the other post-contractual conduct identified in Plaintiffs' Brief sufficient to prove their assent to the T&C. Payments made by non-parties do not prove that Plaintiffs assented to the T&C at the time of contracting. Similarly, Plaintiffs' failed attempt to enforce the T&C against Sixt at the end of the litigation (Pl.Br. at 4, 25) – after years of asserting that the T&C were not binding on them – does not prove that Plaintiffs had knowledge of and agreed to the T&C at the time of contracting, which they repeatedly denied.

Finally, Plaintiffs' reservations are irrelevant because they were not provided the T&C during the reservation process. Contrary to Plaintiffs' argument (Pl.Br. at 29-31), evidence that Calderon theoretically had "access to" a prior version of the T&C is irrelevant because, "access to" is not the standard for incorporating a collateral document under Florida law. *See supra* Argument §I.A.1. Moreover, even assuming Calderon had "access to" a prior version of the T&C when his daughter made a reservation for him online, that does not prove that he received or was told how to access the T&C that were in circulation at the time of his rental.

(R:227:25-28:¶¶86-87). Indeed, Calderon testified that he did not see or agree to the T&C when he made his reservation online. (R:207-3:Tr.34:21-38:21).

Additionally, the terms of Calderon's reservation agreement were not part of his rental agreement—which is a separate contract. As Plaintiffs' Brief argues, Sixt intended for the version of the T&C that were available at the rental counter to be incorporated by reference into Calderon's rental agreement. (R:227:25-28:¶¶86-87; R:227-1:8-9 (new version of the T&C was released for April 2016)). The "entire agreement" clause in the T&C indicates that Sixt intended Calderon's rental agreement to govern his rental, not the reservation agreement. (R:207-1:171:¶11 (April 2016 T&C)). But Calderon did not receive and was not told how to access the paper copy of the T&C at the rental counter until after he signed the Face Page. Consequently, there was no meeting of the minds, and those terms were not incorporated by reference. *Calderon*, 2020 U.S. Dist. LEXIS 24247, at *16-17.

As to Marin and Borel, who made their reservations through third-party booking websites, Plaintiffs argue that the district court should have considered their reservation agreements in determining whether the T&C were incorporated into their rental agreements. *See* Pl.Br. at 5, 25. However, Plaintiffs did not raise this argument before the district court or present any evidence to support that argument. This issue, therefore, should be deemed waived. *See Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly

before this Court."); *Chadwick v. Bank of Am., N.A.*, 616 F.App'x 944, 949 (11th Cir. 2015) (same).

Regardless, Plaintiffs' assertion that the terms of a renter's reservation agreement also "govern the rental" is not supported by any citation. *See* Pl.Br. at 5 n.1. Sixt was not a party to Plaintiffs' reservation agreements with third-party booking companies. Further, there is no evidence in the record that Marin or Borel were notified of, provided, or told how to access the T&C when they booked their rentals via third-party websites. The discovery responses cited by Plaintiffs do not even discuss third-party reservations. *See* Pl.Br. at 25 (citing R:222-5:13-19). Any evidence concerning their reservations agreements, which were not before the trial court, is irrelevant.

Therefore, the district court correctly analyzed the undisputed material facts in holding that the T&C were not incorporated by reference.

### C. Plaintiffs Cannot Prove A Breach Of Terms And Conditions They Did Not Accept.

As a matter of hornbook contract law, "[t]he rights and duties of the parties … are created by the agreement." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317 (11th Cir. 1999). "In the absence of an agreement, neither party has a duty to perform and neither party has a right against the other." *Id.* By extension, "a cause of action for breach … cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the

underlying contract." *Id.* at 1318 (affirming summary judgment against franchisee's contract claim because agreement did not grant franchisee an exclusive territory and thus Burger King had no duty to refrain from licensing new franchisees in the territory).

Here, Plaintiffs' breach of contract claims rely exclusively on the T&C concerning the Fees. (R:151:22-24:¶¶102-112). But the T&C were not part of their rental agreements and thus were not binding on Sixt. *See supra* Argument §I.A. Sixt had no duty to comply with the provisions of the T&C concerning the Fees and thus Sixt cannot have breached those terms. *See Burger King*, 169 F.3d at 1317-18. Therefore, the district court's decision granting summary judgment in Sixt's favor and against Plaintiffs on their contract claims should be affirmed.

## II. SUMMARY JUDGMENT AGAINST PLAINTIFFS ON THEIR FDUTPA CLAIMS SHOULD BE AFFIRMED BECAUSE PLAINTIFFS CANNOT PROVE CAUSATION OR ACTUAL DAMAGES.

Florida law provides a private cause of action for damages when a consumer personally suffers actual damages as a result of a FDUTPA violation. *See* Fla. Stat. § 501.211(2) ("In any action brought by a person who has suffered a loss as a result of a violation of [FDUTPA], such person may recover actual damages…."). An individual asserting a FDUTPA damages claim must prove "three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951. So.2d 860, 869 (Fla. 2d DCA 2006). Here, the district court properly

granted summary judgment against Plaintiffs on their FDUTPA claims because they did not suffer any actual damages that were caused by the allegedly deceptive Fees.

### A. Sixt's Demand That Plaintiffs Pay Fees Did Not Cause Them Actual Damages Because They Did Not Pay Any Fees.

The actual damages claimed by a plaintiff must be direct damages, and not indirect, special, or consequential damages. *See Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. Dist. Ct. App. 1984); *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008) (borrower could not recover any damages under FDUTPA against lender in foreclosure suit based on "lender's representations and nondisclosures [that] resulted in the borrower's inability to refinance the loan") (insertion added). "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Butland*, 951 So.2d at 873.

Florida state and federal courts have consistently rejected FDUTPA claims where the plaintiff has not suffered an out-of-pocket loss. *Himes v. Brown & Co. Sec. Corp.,* 518 So.2d 937, 938 (Fla. 3d DCA 1987) (trial court properly denied recovery on FDUTPA claim because alleged lost profits were speculative and plaintiff "did not suffer any out-of-pocket damages"); *Haun v. Don Mealey Imps.*, 285 F.Supp.2d 1297, 1307 (M.D. Fla. 2003) (dismissing FDUTPA claim because plaintiff "never paid for the vehicle (whether he thought he had at the time of the transaction is irrelevant to an element of *actual* harm) and he does not dispute that

the dealer returned his deposit") (emphasis in original).

For example, in *Jones v. TT of Longwood*, the plaintiff brought a FDUTPA claim against a car dealership after it required her to return a car she purchased. No. 6:06-cv-651-Orl-19DAB, 2007 U.S. Dist. LEXIS 57365, at *2-3 (M.D. Fla. 2007). After the plaintiff took possession of the vehicle, the defendant informed her that her financing agreement had been rejected and demanded that she return the vehicle. *Id.* at *3-4. When she returned the vehicle, the Defendant refunded her down payment. *Id.* at *4. Plaintiff did not pay any amounts to rent the vehicle and did not pay for any insurance during the time she had the vehicle. *Id.* In granting summary judgment against plaintiff on her FDUTPA claim for damages, the court held that plaintiff did not suffer any "actual damage" because she did not have any "out-of-pocket losses." *Id.* at *19-20.

Ignoring *Heller*, *Himes*, and *Barton*, Plaintiffs try to distinguish *Jones* and *Haun* as cases where the defendant did not retain any funds. Pl.Br. at 36-37. But that is a distinction without a difference because the focus of the actual damages inquiry is on whether the plaintiff lost money. No matter whether the plaintiff did not pay the disputed charge (like Plaintiffs) or had their payment refunded (like *Jones* and *Haun*), they do not have any actual damages that they might recover under FDUTPA.

Plaintiffs contend that Sixt violated FDUTPA by sending them claim letters and invoices with various allegedly deceptive Fees. (R:151:24-28:¶¶115-118,125-

- 43 -

130). Yet Plaintiffs admit that they did not personally pay any of the allegedly deceptive Fees at issue. (R:227:7,17-18,20-21:¶¶27-28,60-62,77-79). Plaintiffs cannot prove that they suffered any actual damages that were caused by the allegedly deceptive conduct because they did not pay out of their own pocket any of the Fees about which they complain. Because Plaintiffs have no actual damages that were caused by the allegedly deceptive conduct, the district court correctly granted summary judgment against Plaintiffs on their FDUTPA claims. (R:233:11-12).

### 1. Calderon's Pre-rental Waiver Purchase Cannot Constitute Actual Damages Caused By Sixt's Post-rental Fee Demand.

The SAC does not allege that Calderon paid any of the Fees at issue and does not contend that Calderon suffered any actual damages. (R:151:24,28:¶¶120-121,131-132). Calderon admitted in his deposition that he did not pay any of the Fees. (R:227:7:¶¶27-28). Because Calderon thus cannot prove that he "suffered a loss as a result of a violation of [FDUTPA]," the district court properly granted summary judgment against his FDUTPA claims. Fla. Stat. § 501.211(2); *Butland*, 951 So.2d at 873 (persons "who experienced no actual loss have no claim for damages under FDUTPA").

In the district court, Calderon argued without citing any evidence that there was a dispute of fact about whether Sixt received a payment from a third party when it reduced Calderon's Fee invoice by $500 based on his purchase of PDW.

(R:220:15). However, it is undisputed that the application of the waiver was simply a reduction of Sixt's demand and did not result in the payment of money to Sixt from any source. (R:227:4:¶17). Plaintiffs do not raise that baseless argument on appeal.

In Plaintiffs' Brief (at 37-38), Calderon now argues that the $29.97 price he paid for PDW constitutes actual damages. However, Calderon denied that he was seeking to recover that payment as damages and waived the issue before the district court. (R:227:7-8:¶29). For the first time on appeal, Calderon argues that he was deceived into purchasing PDW and can recover the $29.97 he paid for PDW because, if the T&C do not apply, then he was not liable for damage to the vehicle and the PDW had no real value. *See* Pl.Br. at 37-38. This claim was not raised anywhere below, and should be deemed waived. *Hurley*, 233 F.3d at 1297.

Moreover, contrary to Plaintiffs' Brief (at 38), a renter's "responsibility" for damage to the vehicle arises under the common law and under the express terms of the Face Page – not "solely" from the T&C. *See*, *e.g.*, Restatement (Second) Torts § 928 and cmts. a and b (chattel owner can recover damages for diminution of value, repair costs, loss of use, expenses, and other resulting losses) (followed by *Badillo v. Hill*, 570 So.2d 1067, 1068 (Fla. 5th DCA 1990)). Under the Face Page of Calderon's rental agreement with Sixt, his purchase of PDW entitled him to a waiver of "[his] responsibility for the first of $500 of damage to, or loss of, the Vehicle." (R:207-1:164). Even though Calderon did not accept the T&C, he was still liable for

any vehicle damage, and the Face Pages' terms concerning PDW still governed. Calderon received the benefit of that purchase when Sixt applied the PDW to waive part of its Fee claim. Therefore, contrary to Calderon's argument (Pl.Br. at 38), the district court's conclusions that he did not accept the T&C and received the benefit of his bargain to purchase PDW under the Face Page are entirely consistent. (R:233:12).

This last-ditch attempt to transform Calderon's purchase of PDW at the start of the rental into "actual damages" that he allegedly suffered *ex ante* is a red herring and fails for two additional reasons.

First, Calderon's damage theory puts the cart before the horse. To prove a FDUTPA claim, the "purported deception must be available to a reasonably objective consumer at the time he/she entered into the transaction." *Maor v. Thrifty Auto. Group, Inc.*, Case No. 15-222959-CIV-MARTINEZ-GOODMAN, 2018 LEXIS 168664, at *20 (S.D. Fla. Sept. 30, 2018). Calderon purchased the PDW at the start of his rental (the alleged "damage"), but Calderon did not receive an invoice asking him to pay any Fees until several months after his rental (the alleged "deception"). (R:227:3-4,6:¶¶12,24). The allegedly deceptive conduct in 2017 (the Fee demand) obviously did not cause the alleged damage in 2016 (the PDW purchase price); therefore, Calderon cannot recover the price he paid for PDW under FDUTPA. *See Maor*, 2018 U.S. Dist. LEXIS 168664, at *18-30 (granting summary

judgment against FDUTPA claim because, *inter alia*, plaintiff did not receive the allegedly deceptive disclosure concerning a car rental fee paid for toll processing until after the rental ended).

Second, Calderon cannot have been "damaged" by purchasing PDW because he enjoyed the benefits of that purchase. When Calderon paid for PDW at the start of his rental, Sixt prospectively agreed to waive the first $500 of any damage to the rental vehicle that occurred during his rental. (R:227:4:¶¶15-17). Consistent with that promise, Sixt deducted $500 from its calculation of the amount Calderon owed for damage to the rental vehicle. (R:227:6-7:¶¶25-26). Because he "received the benefit of the bargain," Calderon was not damaged by his purchase of PDW. (R:233:6). *See also Maor*, 2018 LEXIS 168664, at *18-30 (*supra*) (granting summary judgment against FDUTPA claim because, *inter alia*, defendant did not engage in deceptive conduct by charging an itemized fee that plaintiff agreed to pay for toll processing).

Calderon cannot prove the causation and actual damages elements of his FDUTPA claim based on his purchase of PDW. Therefore, the district court properly granted summary judgment in Sixt's favor on Calderon's FDUTPA claims.

### 2. Marin Cannot Prove Causation Or Actual Damages Because He Did Not Pay Of The Fees At Issue.

Marin did not pay any of the Fees. (R:227:16-17:¶¶57-61). Instead, Marin is trying to recover the $75.00 that Art by Ancizar, Incorporated paid to Sixt for

administrative expenses. (R:227:17-18:¶62). But non-party Art by Ancizar is a separate legal entity from Marin. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileged different from those of the natural individuals who created it, who own it, and whom it employs"); *Am. States Ins. Co. v. Kelley*, 446 So.2d 1085, 1086 (Fla. Dist. Ct. App. 1984). Marin has no legal right to recover the payment made by Art by Ancizar, and Marin did not personally suffer a loss when Art by Ancizar made that payment. Because Marin cannot prove that the allegedly deceptive conduct caused him any actual damages, the district court properly entered summary judgment in Sixt's favor on his FDUTPA claims. *Butland*, 951 So.2d at 873 (*supra*). *See also Caribbean Cruise Line, Inc. v. Better Bus. Bur. of Palm Beach Cty., Inc.* 169 So.3d 164, 169 (Fla. Dist. Ct. App. 2015) (FDUTPA claims require proof of an actual loss by the consumer in the transaction at issue).

### 3. Borel Cannot Prove Causation Or Actual Damages Because She Did Not Pay Any Of The Fees At Issue.

Borel did not pay any of the Fees. (R:227:20-21:¶¶77-78). Borel is attempting to recover the $523.75 that her employer, Elope, paid to Sixt. (R:227:21:¶79). Non-party Elope is a separate legal entity from Borel. *See Cedric Kushner Promotions*, 533 U.S. at 163; *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003). Borel does not have a legal right to recover the payment made by Elope, and she did

not personally suffer a loss when Elope made that payment. Because Borel cannot prove that the allegedly deceptive conduct caused her any actual damages, the district court's entry of summary judgment against Borel on her FDUTPA claims should be affirmed. *Butland*, 951 So.2d at 873; *Caribbean Cruise Line*, 169 So.3d at 169.

### 4. Plaintiffs Waived Any Arguments That They Can Prove Actual Damages.

Sixt moved for summary judgment against Plaintiffs on their FDUTPA damages claims on two separate grounds: (1) lack of actual damages; and (2) lack of standing. (R:206:10-17). In response, Calderon argued that he had standing based on his PDW purchase and Marin and Borel argued that they had standing by virtue of payments made by third parties to Sixt on their behalf. (R:220:14-16). Plaintiffs did not argue that they suffered any actual damages or present any evidence of actual damages. (R:220:2-3,14-16).

The district court rejected Plaintiffs' standing arguments because a party can have an injury-in-fact for Article III standing, but not have actual damages under FDUTPA. (R:233:11). The U.S. Supreme Court decisions cited by Plaintiffs below and in their Brief on appeal (at 32) "deal with the injury-in-fact element of Article III standing" and not actual damages under FDUTPA. *Id.* Even if Plaintiffs had standing to pursue injunctive relief (they do not), that does not prove that they suffered any actual damages. *See Desue v. 20/20 Eye Care Network, Inc.*, No. 21-

CIV-61275-RAR, 2022 U.S. Dist. LEXIS 45936, at *33 (S.D. Fla. Mar. 15, 2022) (dismissing FDUTPA damages claims because plaintiffs had not alleged any actual damages, but declining to dismiss injunctive relief claims because the plaintiffs had standing based on alleged misuse of their health information).

Because Plaintiffs did not argue to the district court that they could prove actual damages, their attempts to do so on appeal should be deemed waived. *Hurley*, 233 F.3d at 1297.

**B. Plaintiffs Lack Standing To Pursue FDUTPA Damages Claims.**

As an alternative ground for affirming the district court's decision, this Court should find that Plaintiffs lack standing to pursue their FDUTPA damages claims. To establish Article III standing, a plaintiff must prove that he or she "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Not every statutory violation satisfies the concrete injury requirement because "an injury in law is not an injury in fact." *Id.* at 2205. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 339, 341 (2016)). Plaintiffs must prove that they have "Article III standing in order to recover individual damages." *See TransUnion*, 141 S. Ct. at 2207-08. And "*plaintiffs must demonstrate standing* for each claim that they press and *for each form of relief that they seek (for example, injunctive relief and damages)*." *Id.* (emphasis added).

Here, Plaintiffs cannot prove that they have standing to pursue FDUTPA *damages* claims solely based on proof of an alleged FDUTPA violation. *See id.* at 2203-05. They must prove that the alleged violation caused them to suffer actual damages. *See Thermolife Int'l LLC v. Bpi Sports LLC*, No. CV-20-02091-PHX-SPL, 2021 U.S. Dist. LEXIS 31700, at *17 (D. Ariz. Feb. 19, 2021) (dismissing FDUTPA claim for lack of standing where plaintiffs had no concrete injury and had "not pled any actual damages to themselves").

Plaintiffs have not cited any case holding that payments made by third parties can be used to establish standing where, as here, the plaintiff has not suffered any actual damages. The Supreme Court and federal standing cases cited by Plaintiffs are readily distinguishable. *See* Pl.Br. at 32; R:233:11. Unlike a debt collector, Marin and Borel do not hold an assignment of a third party's claim. *Contra Sprint Commc'ns Co., L.P. v. APCC Servs, Inc.*, 554 U.S. 269, 286 (2008). Additionally, the doctrine of subrogation allows an insurer to step into the shoes of an injured party, not the other way around. *Contra United States v. Am. Tobacco Co.*, 166 U.S. 468, 473-74 (1987) (insured holds a claim against a tortfeasor even if the plaintiff receives insurance proceeds from its insurer because the insured has suffered an actual loss, such as property damage). Besides, Marin and Borel were not indemnified by an insurer and had no pecuniary losses in the first place. *Contra id.*; *Alta Wind I Owner Lessor C v. United States*, 150 Fed. Cl. 152, 155 (2020).

Just as an insured does not have any right to recover money paid to a third party by their insurer, Marin or Borel do not have possessory interest in the money paid "on their behalf" by their companies. *Cf. Lucas v. Breg, Inc.*, 212 F.Supp.3d 950, 964-65 (S.D. Cal. 2016) ("The only right that Plaintiffs have in their insurance benefits is a right to have monies paid on their behalf to a third party…. Plaintiffs' insurance premiums did not guarantee them a future possessory interest in monies paid on their behalf to third parties."). Because Plaintiffs do not stand in the shoes of their companies – who have no right of subrogation – allowing these Plaintiffs to recover amounts their companies paid would constitute an untenable windfall. *See id.* (granting summary judgment against California Unfair Competition Law ("UCL") claims brought by plaintiffs who did not pay out-of-pocket for the product).

To the extent Marin and Borel now rely on their (waived) "collateral source" argument to establish standing, courts nationwide have rejected that argument. *See Gillespie v. Travelscape LLC*, No. C13-0622 RSM, 2014 U.S. Dist. LEXIS 119148, at *6 (W.D. Wash. Aug. 26, 2014) ("the collateral source rule is inapplicable where a plaintiff cannot plead that he or she has suffered the damages sought.") (citing *Bechara v. Bayer Corp. (In re Trasylol Prods. Liab. Litig.)*, No. 08-MD-01928-JOHNSON, 2010 U.S. Dist. LEXIS 145646, at *195 (S.D. Fla. Mar. 16, 2010); *Qst Envtl. v. Nat'l Union Fire Ins. Co.*, Civ. No. 98-572-M, 2002 U.S. Dist. LEXIS 9937, *5 fn. 2 (D.N.H. 2002) ("The collateral source rule, relied on by ESE to avoid the

standing issue, applies only to preserve an award of damages and does not affect a party's standing to litigate a claim.")); *Williamson v. Genentech, Inc.*, No. 19-cv-01840-JSC, 2020 U.S. Dist. LEXIS 46999, at *16 (N.D. Cal. Mar. 18, 2020) ("It is thus unsurprising that no court has used the collateral source rule to find Article III standing. This Court is not persuaded that it should be the first.").

Because Plaintiffs did not pay the Fees at issue and do not have standing to pursue FDUTPA damage claims, summary judgment was properly granted.

### C. Marin and Borel Waived Their Collateral Source Doctrine Argument, Which Cannot Be Used To Prove Actual Damages Anyway.

In their appellate Brief (at 33-37), Marin and Borel argue that the district court erred in finding that they had no actual damages because they contend that they can recover payments made by third parties under the collateral source doctrine. However, Plaintiffs did not raise this argument or cite any cases addressing the collateral source doctrine in their summary judgment opposition. (R:220:2-3,14-16). Plaintiffs thus waived their collateral source argument, and the district court's decision should be affirmed. *See Hurley*, 233 F.3d at 1297.

Moreover, courts have rejected similar collateral source arguments raised in support of claims under the UCL, which resembles FDUTPA. For example, in *Bechara*, Bayer argued that Bechara did not have standing to sue under the UCL *and* did not suffer actual damages because he did not pay for the drug at issue; it was

paid for by his insurer. *See* 2010 U.S. Dist. LEXIS 145646, at *194-96. In response, Bechara argued that under the collateral source doctrine evidence of his insurer's payment could not be used to defeat his claims. *See id.* The district court disagreed because the UCL requires a plaintiff to prove they suffered an injury in fact and lost money or property as a result of the allegedly unfair conduct. *See id.* Because Bechara could not prove that he personally suffered a financial loss and had no right to recover what the insurer paid, the court granted summary judgment against his UCL claim. *Id.* The same logic applies here under FDUTPA.

Unsurprisingly, Plaintiffs do not cite a single FDUTPA case supporting their collateral source theory, and the federal cases and cases from other states they cite are inapposite. *See* Pl.Br. at 33-36. Payments made by third parties do not equate to damages suffered by Plaintiffs—those are not out-of-pocket losses. *See supra* Argument §II.A. Nor does the collateral source doctrine confer any legal right to recover those third-party payments. *See supra* Argument §II.B. No case Plaintiffs cite held otherwise.

Plaintiffs' own cases hold that the collateral source rule is merely an "exception to the basic tort principle that damages are designed to make the plaintiff whole – the rule allows a plaintiff to recover damages for a harm *for which she has already been compensated.*" *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1310 (11th Cir. 2020) (discussing the application of the collateral source rule to

- 54 -

"medical damages" in a federal maritime law case) (emphasis added). The criteria for the (inapplicable) collateral source doctrine are not met here. First, no payments were made to Plaintiffs, and thus there is no need for the collateral source exception to the bar on double recoveries. *See id.* Second, Plaintiffs did not suffer any injury that might be reduced by a third-party's payment. Unlike the personal injury cases in Plaintiffs' Brief on this issue (at 33-36) – only one of which applied Florida law (*Janes v. Baptist Hosp. of Miami, Inc.*, 349 So.2d 672 (Fla. 3d DCA 1977) – Plaintiffs were not physically injured and did not have any medical expenses that were covered by a third-party insurer.

The principal rationale behind the collateral source doctrine does not fit this scenario either. Plaintiffs' Brief (at 34) recognizes that the rule is intended to prevent a defendant from benefitting from a plaintiff's insurance contracts. *See Higgs*, 969 F.3d at 1310. But the payments Marin and Borel seek to recover were not made by their insurers, and they do not have any right to recover their companies' payments.

Plaintiffs' belated attempt to use the inapplicable collateral source rule as an end-run on FDUTPA's actual damages requirement should be rejected for the multitude of reasons discussed above including that the argument has been waived.

## <u>CONCLUSION</u>

The facts and the law are not on Plaintiffs' side, so they resort to fairness arguments. Plaintiffs' chief objection – that Sixt is somehow "avoiding" its T&C –

is nonsensical because those terms were not part of Plaintiffs' contracts. *See* Pl.Br. at 31. The district court only decided that these Plaintiffs cannot enforce the T&C because they did not accept those terms. Sixt's enforcement of its T&C against others, who unlike Plaintiffs are not parties to this case and accepted the T&C, does not enter into the equation.

Plaintiffs also complain Sixt will reap a "windfall" if they cannot recover money paid by third parties. *See* Pl.Br. at 37. These assertions assume the correctness of Plaintiffs' merits contentions about the legality of Sixt's Fee demands, which Sixt disputes, which were not adjudicated by the district court, and which are not at issue on appeal. It is not "unfair" to refuse to permit Plaintiffs to recover money that someone else paid and that they have no legal right to recover.

There is nothing unjust about dismissing claims that fail on their essential elements. That is precisely the result required by law and equity. Accordingly, the district court's Opinion and Final Judgment should be affirmed.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This brief is printed in 14-point Times New Roman, and contains 12,992 words.

Dated:     May 3, 2023          Respectfully submitted,

*/s/ Patrick M. Emery*
Patrick M. Emery, Esq.
GA Bar No. 821303
Lavender Hoffman, LLC
945 East Paces Ferry Rd NE
Suite 2000
Atlanta, GA 30326
Tel.: (404) 793-0652
patrick.emery@lhalawyers.com

Irene Oria, Esq.
FL Bar No. 484570
FisherBroyles, LLP
1221 Brickell Ave.
Suite 900
Miami, FL 33131
Tel.: (786) 873-4603
irene.oria@fisherbroyles.com

*Counsel for Appellee*
*Sixt Rent A Car, LLC*

# ADDENDUM

## Relevant Sections of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201, et seq.

### Fla. Stat. § 501.211. Other individual remedies.

(1)  Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

(2)  In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.

(3)  In any action brought under this section, upon motion of the party against whom such action is filed alleging that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may, after hearing evidence as to the necessity therefor, require the party instituting the action to post a bond in the amount which the court finds reasonable to

indemnify the defendant for any damages incurred, including reasonable attorney's fees. This subsection shall not apply to any action initiated by the enforcing authority.

**Fla. Stat. § 501.212. Application.**

This part does not apply to:

> …

> (3) A claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction….

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2023, I caused the foregoing Amended Brief of Appellee to be filed via the Court's CM/ECF system, which will send notice of electronic filing to the counsel of record identified in the service list below:

Brian W. Warwick
Janet R. Varnell
Matthew Peterson
Erika Roxanne Willis
Varnell & Warwick, P.A.
1101 E. Cumberland Avenue
Suite 201H, #105
Tampa, FL 33602
T: (352) 753-8600
F: (352) 504-3301
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com
mpeterson@varnellandwarwick.com
ewillis@varnellandwarwick.com

*/s/ Patrick M. Emery*
Patrick M. Emery

*Counsel for Appellee*
*Sixt Rent A Car, LLC*